# In the United States Court of Federal Claims

No. 20-299C

(Filed Under Seal: April 16, 2020)

(Reissued: April 21, 2020)

|  |  |  |
|---|---|---|
| **NIKA TECHNOLOGIES, INC.,** | ) | |
| | ) | Protest of refusal to implement an |
| Plaintiff, | ) | automatic stay of performance after a |
| | ) | protest filed with GAO; 31 U.S.C. § 3553; |
| v. | ) | timeliness of the protest to GAO; statutory |
| | ) | interpretation; debriefing date; 10 U.S.C. |
| **UNITED STATES**, | ) | § 2305(b)(5)(B)(vii), 31 U.S.C. § |
| | ) | 3553(d)(4)(A)(ii) |
| Defendant. | ) | |
| | ) | |

Anuj Vohra, Crowell & Moring LLP, Washington, D.C. for plaintiff.  On the briefs were David B. Robbins, James G. Peyster, and Tyler S. Brown, Crowell & Moring LLP, Washington, D.C.

James W. Poirier, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. for defendant.  With him on the briefs were Joseph H. Hunt, Assistant Attorney General, Civil Division, and Robert E. Kirschman, Jr., Director, and Douglas K. Mickle, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.  Of counsel were Tamar Gerhart and Margaret Simmons, United States Army Corps of Engineers.

**OPINION AND ORDER**[1]

LETTOW, Senior Judge.

Plaintiff NIKA Technologies, Inc. ("NIKA") protests the actions of the United States Army Corps of Engineers (the "Corps") in refusing to implement an automatic stay of performance under the Competition in Contracting Act of 1984 ("CICA"), Pub. L. No. 98-369, 98 Stat. 1175 (codified at 31 U.S.C. §§ 3551-56).  NIKA alleges that it timely filed a post-award bid protest at the United States Government Accountability Office ("GAO") under 31 U.S.C. § 3553(d)(4)(A) and therefore triggered the automatic stay provision of Subparagraph (d)(3)(A).

---

[1]Because of the protective order entered in this case, this opinion was filed initially under seal.  The parties were requested to review the decision and provide proposed redactions of any confidential or proprietary information.  No redactions were requested.

The Corps, however, believing NIKA's GAO protest to be untimely, did not implement a stay of performance.  This dispute originates from the Corps' decision not to award NIKA a maintenance engineering contract following the Corps' request for proposals.  As relief, NIKA requests that this court declare that the Corps' refusal to implement the CICA stay was arbitrary, capricious, an abuse of discretion, and not in accordance with law.  NIKA requests that this court enjoin the Corps from taking further action on the contract at issue and grant any other relief the court deems appropriate.  *See* Compl. at 13, ECF No. 1.

## FACTS[2]

On June 21, 2019, the Corps, acting through the United States Army Engineering & Support Center in Huntsville, Alabama, issued a solicitation (the "solicitation") seeking services for its Operation and Maintenance Engineering and Enhancement Program ("OMEE").  AR 1-1 to 2.[3]  The Corps planned to award multiple "Indefinite Delivery/Indefinite Quantity (ID/IQ) type contracts" to qualifying bidders.  AR 1-2.  NIKA submitted a proposal on August 1, 2019, *see* Pl.'s Mot. for Judgment on the Admin. Record ("Pl.'s Mot.") at 4, ECF No. 18, but was notified on February 27, 2020 that it was not a successful offeror in this solicitation, *see* AR 2-160.  The Corps found that NIKA was an unacceptable bidder under Factor 1 of the solicitation, "Corporate experience," AR 2-162, and it notified NIKA that "[p]ursuant to FAR 15.506(a), [NIKA] may request a debriefing by submitting a written request for debriefing to the contracting officer within three days after receipt of this notice," AR 2-160.

On February 28, 2020, NIKA requested a debriefing from the Corps.  *See* AR 3-164.  The Corps acknowledged the request, *see* AR 4-166 to 167, and on March 3, 2020, NIKA sent the Corps a list of questions it planned to ask during the debriefing, *see* AR 4-166.  The Corps provided NIKA with a written debriefing via letter on March 4, 2020, *see generally* AR 5, and included in the debriefing the option for NIKA to "submit additional questions related to this debriefing within two (2) business days after receiving the debriefing," AR 5-174.  The letter stated that "[t]he [g]overnment will consider the debriefing closed if additional questions are not received within (2) business days.  If additional questions are received, the [g]overnment will respond in writing within five (5) business days . . . [and] will consider the debriefing closed upon delivery of the written response to any additional questions."  AR 5-174.[4]

---

[2]The following recitations constitute findings of fact by the court from the administrative record of the procurement filed pursuant to Rule 52.1(a) of the Rules of the Court of Federal Claims ("RCFC").  *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005) (specifying that bid protest proceedings "provide for trial on a paper record, allowing fact-finding by the trial court").

[3]The government filed the administrative record pursuant to RCFC 52.1(a) on March 20, 2020, ECF No. 16.  It is divided into 8 tabs and sequentially paginated.  Citations to the record are cited by tab and page as "AR ___-___."

[4]Because the debriefing letter was received on March 4, 2020, the deadline to submit additional questions was March 6, 2020.

NIKA sent a letter to the Corps on March 5, 2020 noting that it had received the written debriefing the previous day and that it planned to "follow up with [the Corps] by [March 6, 2020] on any official debrief questions" it might submit. AR 6-178. On March 7, 2020, NIKA informed the Corps that it did not have any official debrief questions to submit. *See* AR 6-176. NIKA then filed a post-award bid protest at GAO on March 10, 2020. *See* AR 7-185 to 210. In this protest, NIKA sought the imposition of "the automatic suspension of contract performance pursuant to 4 C.F.R. § 21.6[,] 31 U.S.C. § 3553(c)(1), and FAR § 33.104(b)(1)." AR 7-187 (capitals removed). The Corps indicated in a filing to GAO that it believed NIKA's protest filing to be untimely for the imposition of an automatic stay under CICA, *see* AR 8-211, contending that the latest date for a timely filing would have been March 9, 2020, *i.e.*, "[f]ive days after a debriefing date offered to the protester under a timely debriefing request and no additional questions related to the debriefing are submitted," AR 8-212.

NIKA filed its complaint in this court on March 16, 2020, challenging the Corps' refusal to implement the automatic stay. *See generally* Compl. Submission of the administrative record and briefing by the parties was accelerated. Following the submission of the administrative record on March 20, 2020, NIKA filed its motion for judgment on the administrative record on March 24, 2020, *see* Pl.'s Mot., and the government filed a cross-motion for judgment on the administrative record on March 31, 2020, *see* Def.'s Cross-Mot. for Judgment on the Admin. Record and Response to Pl.'s Mot. ("Def.'s Cross-Mot."), ECF No. 20. Briefing was completed on April 10, 2020, *see* Pl.'s Reply and Response to Def.'s Cross-Mot. ("Pl.'s Reply"), ECF No. 21; Def.'s Reply, ECF No. 22, and a hearing was held on April 15, 2020. The case is ready for disposition.

**STANDARDS FOR DECISION**

The Tucker Act vests this court with jurisdiction "to render judgment on an action by an interested party objecting to a . . . proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). This jurisdiction extends to all stages of the procurement process, including an agency's decision regarding the implementation of a CICA stay under 31 U.S.C. § 3553. *See RAMCOR Servs. Grp., Inc. v. United States*, 185 F.3d 1286, 1290 (Fed. Cir. 1999). Standards set forth in the Administrative Procedure Act ("APA"), codified in relevant part at 5 U.S.C. § 706, govern the court's review of an agency's actions in a procurement challenge. *See* 28 U.S.C. 1491(b)(4) ("In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5."). Specifically, under 5 U.S.C. § 706(2)(A), the court may set aside an agency's procurement decision that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

Traditionally, this court's cases concerning disputes over 31 U.S.C. § 3553 involve a situation where the agency has exercised its discretion to override the automatic stay pursuant to 31 U.S.C. § 3553(d)(3)(C). *See, e.g.*, *Intelligent Waves, LLC v. United States*, 137 Fed. Cl. 623, 626 (2018); *Dyncorp Int'l LLC v. United States*, 113 Fed. Cl. 298, 299 (2013). In that scenario, the court reviews the agency's actions with a deferential view, determining only "whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion."

*Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1333 (Fed. Cir. 2001) (internal quotation and citation omitted).  This protest, however, does not involve the review of an agency's discretionary action but rather presents a pure question of statutory interpretation.  That is, a determination of when the debriefing period closed for NIKA in applying 31 U.S.C. § 3553(d)(4)(A)(ii), informing the question of whether the agency's actions were in accordance with law.  The court decides a question of statutory interpretation, such as the one posed in this case, *de novo*.  *Accord Information Tech. & Applications Corp. v. United States*, 316 F.3d 1312 (Fed. Cir. 2003); *Mississippi Dep't of Rehab. Servs. v. United States*, 61 Fed. Cl. 20, 25 (2004) ("[T]he interpretation of statutes is a legal matter for courts to decide.").

## ANALYSIS

This dispute hinges on the timeliness *vel non* of NIKA's GAO protest under 31 U.S.C. § 3553(d)(4)(A).  Under this statute, NIKA is entitled to an automatic stay of performance if its GAO protest was filed within the later of two dates: (1) "the date that is 10 days after the date of the contract award," 31 U.S.C. § 3553(d)(4)(A)(i); or (2) "the date that is *5 days after the debriefing date* offered to an unsuccessful offeror for any debriefing that is requested and, when requested, is required," § 3553(d)(4)(A)(ii) (emphasis added).  There is no dispute that the latter is the applicable deadline in this case, but the parties disagree as to which date is the "debriefing date."

NIKA argues that its "decision not to submit additional debriefing questions by March 6 meant that [its] debriefing was closed as of that date," and therefore, its protest filed on March 10 would be timely under Clause 3553(d)(4)(A)(ii).  Pl.'s Mot. at 6.  The government contends instead that "[t]he debriefing date was March 4, 2020 [and because NIKA] filed its protest six days later, on March 10, 2020 . . . [NIKA] failed to meet the deadline set forth at 31 U.S.C. § 3553(d)(4)(A)(ii)."  Def.'s Cross-Mot. at 21 (footnote omitted).

The court begins the inquiry with the text of the statute.  *See Consumer Prod. Safety Comm'n v. GTE Sylvania*, 447 U.S. 102, 108 (1980) ("[T]he starting point for interpreting a statute is the language of the statute itself.").  The relevant language is that of 31 U.S.C. § 3553(d)(4)(A)(ii), *viz.*, "the date that is 5 days after the debriefing date."  The provisions of 10 U.S.C. § 2305(b)(5)(B), define what is included in the "debriefing" of Section 3553, and are pertinent to this analysis.  These provisions were added as part of the 2018 National Defense Authorization Act, Pub. L. 115-91, 131 Stat. 1283 (2017) ("2018 NDAA").  Notably, Section 818 of the NDAA, entitled "enhanced Post-award Debriefing Rights," implemented a series of changes to DOD's post-award debriefing process.  Pursuant to the 2018 NDAA, the definition of "debriefing" in CICA, as applicable to DOD, was amended to "include" a two-day period in which unsuccessful offerors could submit additional questions:

>   (B)   *the debriefing shall include*, at a minimum—
>
>       (i) the agency's evaluation of the significant weak or deficient factors in the offeror's offer;

> (ii) the overall evaluated cost and technical rating of the offer of the contractor awarded the contract and the overall evaluated cost and technical rating of the offer of the debriefed offeror;
>
> (iii) the overall ranking of all offers;
>
> (iv) a summary of the rationale for the award;
>
> (v) in the case of a proposal that includes a commercial product that is an end item under the contract, the make and model of the item being provided in accordance with the offer of the contractor awarded the contract;
>
> (vi) reasonable responses to relevant questions posed by the debriefed offeror as to whether source selection procedures set forth in the solicitation, applicable regulations, and other applicable authorities were followed by the agency; and
>
> (vii) *an opportunity for a disappointed offeror to submit, within two business days after receiving a post-award debriefing, additional questions related to the debriefing.*

10 U.S.C. § 2305(b)(5)(B) (emphasis added).[5] Consequently, if questions are not submitted in the two-day period, the debriefing closes and the debriefing process ends. *Id.* If questions are submitted, the procuring agency should respond to those questions within five days and the extended debriefing process closes upon the offeror's receipt of those responses. 10 U.S.C. § 2305(b)(5)(C); 31 U.S.C.§ 3553(d)(4)(B).

     NIKA asserts that when Section 3553 is read in conjunction with Section 2305, the debriefing "include[s] the two-day window following receipt of the March 4 [debriefing] letter in which NIKA had an opportunity to submit questions." Pl.'s Mot. at 13. Accepting this interpretation, the debriefing date would be March 6—two days after March 4. The government responds with three main arguments. First, the government suggests that because Section 2305 only requires an "opportunity" for supplemental debriefing, this provision merely permits the government to allow a supplemental debriefing period, triggered by the receipt of additional questions. *See* Def.'s Cross-Mot. at 18-19. Second, the government argues that under the plain meaning of the statute, "the debriefing date" is a singular day and not a "process." *Id.* at 20. Lastly, the government argues that because Congress specifically identifies time periods in Section 3553 but not the two-day question period, NIKA's reading runs counter to the statutory scheme. *See id.* at 19-20.[6]

---

     [5]There do not appear to be any comparable provisions applicable to debriefings conducted by federal procurement agencies other than DOD. *See* 41 U.S.C. § 3704(c).

     [6]The court does not opine on whether this two-business-day period is always required to be included in DOD's debriefing process. On the record before the court, this two-day window

5

The court is persuaded that NIKA's interpretation is correct.  First, defendant's reliance on the term "opportunity" is misguided.  An opportunity, by definition, is "*a time*, condition, or set of circumstances permitting or favourable to a particular action or purpose." *Opportunity*, *Oxford English Dictionary*, https://www.oed.com/view/Entry/131973?redirectedFrom=opportunity#eid (last visited April 14, 2020) (emphasis added).  As defined in Subparagraph 2305(b)(5)(B), the debriefing plainly includes "a time" of two business days in which a disappointed offeror can submit questions for further debriefing.  *See* 10 U.S.C § 2305(b)(5)(B)(vii).

The government's focus on the singular nature of "date" is also unconvincing.  The government suggests the debriefing date must refer to only one date because the statute uses the singular form, and therefore, "[t]he debriefing date is the date when the debriefing occurs," Def.'s Cross-Mot. at 20, here, that date being March 4, 2020, *id.* at 21.  This limited reading, however, is not supported by the precedents cited by the government in its own brief, *i.e.*, cases that specifically dealt with scenarios in which the debriefing lasted more than one day.  *See id*. at 20-21 (collecting cases including *WiSC Enters., LLC–Costs*, B-415613.5, Aug. 28, 2018, 2019 CPD ¶ 189; *ERIMAX, Inc.*, B-410682, Jan. 22, 2015, 2015 CPD ¶ 92; *Harris IT Servs. Corp.*, B-406067, Jan. 27, 2012, 2012 CPD ¶ 57).  These cases confirm that "the debriefing date" in the statute, while singular, refers to the date at the end of a potentially multi-day debriefing *process*. *See, e.g.*, *WiSC. Enters., LLC-Costs*, B-415613.5, Aug. 28, 2018, 2019 CPD ¶ 189.  Therefore, NIKA's assertion that its debriefing process lasted three days (March 4-6, 2020), including the two-business day opportunity to submit questions, neither runs counter to the statutory language nor common debriefing practice.  It follows that "the debriefing date" here, under the statute, is March 6, 2020—the last day of NIKA's debriefing process.

The government suggests that if Congress wanted to include the two-business-day window for questions as a triggering date in the timing under 31 U.S.C. § 3553(d)(4), it could have done so when it amended Section 2305 in the 2018 NDAA.  *See* Def.'s Cross-Mot. at 19.  But Congress did not need to amend the "debriefing date" specified in 31 U.S.C. § 3553(d)(4)(A)(ii) to account for these two extra days, because as explained above, this deadline already included the possibility of a debriefing process that lasts more than one day.  Further, Congress, in choosing not to amend the reference to "debriefing date" in Section 3553 when it amended Section 2305 to include an extra two business days for questions, implicitly endorsed the statute's previous interpretation that the debriefing date referred to in Subparagraph 3553(d)(f)(A) is simply the last day of the debriefing process.[7]

---

was explicitly included in NIKA's written debriefing letter, *see* AR 5-174 (quoted *supra*, at 2), as Clause 2305(b)(5)(B)(vii) specifies.

[7]To determine whether a protest is timely for purposes of triggering the automatic stay, Section 3553 directs as follows:

[The time for obtaining the automatic stay] is the period beginning on the date of the contract award and ending on the later of—

(i)   The date that is 10 days after the date of the contract award; or

Additionally, the government's own debriefing letter supports this reading of the statute. The written debriefing letter provided to NIKA on March 4, 2020 stated that "[t]he [g]overnment will consider the debriefing closed if additional questions are not received within (2) business days.  If additional questions are received, the [g]overnment will respond in writing within five (5) business days . . . [and] will consider the debriefing closed upon delivery of the written response to any additional questions." AR 5-174.  A plain reading of this statement provides two potential deadlines for the close of the debriefing: (1) if no additional questions were submitted, the debriefing would close after two days; and (2) if additional questions were submitted, the debriefing would close after the government provided written responses, no later than five days after receiving the questions.  The letter gives no indication that the agency would consider the debriefing closed on the date it was received, that is, March 4, 2020.  As such, this statement supports NIKA's interpretation that "the debriefing date" in this case was March 6, 2020.

## CONCLUSION

For the reasons stated, the court finds that NIKA's GAO protest was timely under 10 U.S.C. § 2305 and 31 U.S.C. § 3553 and that NIKA was entitled to an automatic stay under CICA.  Consequently, NIKA's motion for judgment on the administrative record is GRANTED, and the government's cross-motion for judgment on the administrative record is DENIED.  The parties stipulated that if NIKA were successful on the merits of the case, an injunction would be proper.  *See* Def.'s Cross-Mot. at 28; Pl.'s Reply at 14-15.  In light of this agreement, the court ENJOINS the Corps from proceeding with any task order awards during the pendency of NIKA's GAO protest.  The clerk is directed to enter judgment accordingly.

No costs.

It is so **ORDERED**.

                                                        s/ Charles F. Lettow
                                                        Charles F. Lettow
                                                        Senior Judge

---

(ii)      The date that is 5 days after the debriefing date offered to an unsuccessful offeror for any debriefing that is requested and, when requested, is required.

31 U.S.C. § 3553(d)(4)(A).